#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

v.                                                                                   Cr. No. 06-538 JH

**DANUEL DEAN QUAINTANCE,**
**MARY HELEN QUAINTANCE,**
**TIMOTHY JASON KRIPNER, and**
**JOSEPH ALLEN BUTTS,**

        **Defendant.**

#### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Danuel Quaintance's *Motion to Reconsider Denial of Motion to Dismiss Indictment* [Doc. No. 219]. Having reviewed the motion, the law, and the arguments of the parties, the Court concludes that the motion to reconsider should be denied.

#### DISCUSSION

Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *See Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Arguments raised for the first time in a motion for reconsideration are not properly before the court and generally need not be addressed. *Burnette v. Dresser Indus., Inc.*, 849 F.2d 1277, 1285 (10th Cir. 1988) (citing *Eureka-Carlisle Co. v. Rottman*, 398 F.2d 1015, 1019 (10th Cir. 1968)).

**I.       2000 AMENDMENT TO RFRA**

In support of his motion to reconsider, Defendant argues first that this Court should not have followed the Tenth Circuit's decision in *United States v. Meyers*, 95 F.3d 1475 (10th Cir. 1996) because in 2000, Congress enacted the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). At the same time, Congress incorporated RLUIPA's definition of "religious exercise" into the Religious Freedom Restoration Act ("RFRA"). *See* 42 U.S.C. § 2000bb-2(4). Prior to 2000, and at the time the Tenth Circuit decided *Meyers*, RFRA defined "exercise of religion" as "the exercise of religion under the First Amendment to the Constitution." *Id.* (historical and statutory notes). Defendant argues that the revised definition of "religious exercise" is broader than the original definition, and that along with the Ninth Circuit's recent opinion in *Navajo Nation v. United States Forest Service*, 479 F.3d 1024, 1033 (9th Cir. 2007), it invalidates the multi-pronged test adopted in *Meyers* to determine what constitutes "religious" beliefs. *Meyers*, 95 F.3d at 1483-84. This argument fails for several reasons. As an initial matter, this is the first time Defendant has argued that RFRA's amended definition of "exercise of religion" invalidates *Meyers*. He failed to present that argument in his original briefing, at the evidentiary hearing, and in his written closing arguments submitted after the evidentiary hearing. That failure is critical, since Defendant's argument turns on a 2000 amendment of RFRA that took place approximately six years before this case commenced, and Defendant certainly could have raised the argument the first time he briefed his motion to dismiss the indictment. In other words, this was not an "intervening" change in the controlling law; it took place years before the issue came before the Court. Defendant's failure to raise this argument until the motion to reconsider is sufficient grounds to reject it.

Second, the argument fails on its merits. Defendant makes the conclusory statement that the amended definition of "religious exercise" nullifies *Meyers*, but he fails to adequately explain why this is so. He summarily contends that *Meyers* is geared toward "traditional church-and-steeple religious practices common in the Western world," and that the new definition "rejects such a formulation by specifically eliminating any requirement that the religious practice be part of a 'system of religious belief." Motion at p.3. Defendant overlooks the fact that under either definition of "religious exercise," RFRA protects only *religion*, as opposed to secular beliefs and practices. Thus, whether or not that religious exercise is part of a system of religious belief, it still must be religious in nature. *Meyers*, which is binding upon this Court, provides a framework for that determination. Furthermore, the Court rejects Defendant's suggestion that under a balancing of the *Meyers* factors, only a western religion in the Judeo-Christian tradition could qualify as religion; indeed, a broad array of world religions could satisfy the *Meyers* factors.

Finally, Defendant's reliance upon *Navajo Nation* is misplaced. In that case, the Ninth Circuit observed that "Congress expanded the statutory protection for religious exercise" by amending the statutory definition, which "protects a broader range of religious conduct than the Supreme Court's interpretation of 'exercise of religion' under the First Amendment." 479 F.3d at 1033. The Ninth Circuit then held that any of its prior RFRA decisions which relied upon the old definition of "religious exercise" were no longer good law. Based on that, Defendant argues that Tenth Circuit RFRA opinions before 2000, including *Meyers*, are no longer good law. However, the Ninth Circuit has no power to overrule a Tenth Circuit decision such as *Meyers*, which remains the law in this Circuit. Furthermore, and most importantly, Defendant has failed to explain how and why the *Meyers* factors are incompatible with the 2000 definition of "religious exercise." The amended definition includes any exercise of religion, even if it is not compelled by or central to a

3

"system of religious belief."[1]  However, it still requires the protected activity to be religious in nature.  The *Meyers* framework, designed specifically to help a reviewing court determine whether a particular activity is "religious," still informs that issue. Having no authority to the contrary, the Court concludes that *Meyers* is still the law in the Tenth Circuit and did not err in applying its multi-factor test.[2]

## II.   SUPREME COURT CASES PREDATING *MEYERS*

Next, Defendant argues that this Court should refuse to apply the *Meyers* factors because they conflict with Supreme Court opinions issued prior to *Meyers*.  In this regard, Defendant expands upon his previous reliance on *United States v. Seeger*, 380 U.S. 163 (1965) and *Thomas v. Review Bd. of the Indiana Emp. Sec. Div.*, 450 U.S. 707 (1981).  He also cites for the first time to *Welsh v. United States*, 398 U.S. 333 (1970) and *Torcaso v. Watkins*, 367 U.S. 488 (1961).  The Court concludes that *Meyers* does not directly conflict with the rationales and holdings in any of these cases and therefore is not unconstitutional, as Defendant contends.

Defendant also argues that in its prior Memorandum Opinion and Order [Doc. No. 192], this Court held that he failed to present evidence that a higher power expects him to act in accordance with the motto "good thoughts, good words, good deeds," and that the Supreme Court has forbidden courts from demanding proof of the veracity of particular religious beliefs.  Defendant misapprehends this Court's analysis and opinion.  As the Court set forth in pages 11-14 of its Memorandum Opinion and Order, under *Meyers* a religion is often characterized by a moral or

---

[1] Neither Defendants nor the statute distinguish a "system of religious belief" from "any exercise of religion" within the amended definition.

[2] At some point the Tenth Circuit may revisit the *Meyers* factors, and may choose to modify or even eliminate them altogether.  However, that issue will be left to the Tenth Circuit; this Court is constrained to follow established precedent.

ethical system that distinguishes right from wrong, and often imposes duties which its adherents believe to be imposed by some higher power, force, or spirit. *Meyers*, 95 F.3d at 1483. In its analysis, the Court merely observed that Defendants had failed to present evidence of their *belief* that any higher power expects them to act in accordance with the philosophy of "good thoughts, good words, good deeds," and that their failure to present evidence of such a belief was a further indicator that their beliefs are secular, as opposed to religious. The Court did not purport to require the Defendants to prove that a higher power exists and expects them to behave in a particular way; the Court merely observed that Defendants espoused no belief in a moral code imposed by any sort of higher force, power, or spirit.

In sum, the Court declines to reconsider its determination that Defendant's beliefts are not "religious" as required by RFRA.

### III.  SINCERITY OF BELIEF

Defendant argues that the Court erred in finding that his beliefs, in addition to not being religious, are not sincerely held. Defendant contends that sincerity is a fact issue for the jury and is not an issue for the court. This argument fails for two reasons. First, Defendant never argued that the issue of sincerity should be decided by a jury, not the Court, until he filed his motion to reconsider. As explained above, arguments raised for the first time in a motion for reconsideration are not properly before the Court. Second, Defendant effectively waived this argument in his motion to dismiss by affirmatively asking the Court to find that his beliefs are sincere. *See* Motion [Doc. No. 34] at p. 5 ("Mr. Quaintance will establish that his use of cannabis is a sincere religious practice . . ."); Defendants' Reply [Doc. No. 68] at p. 9 ("The government questions both the sincerity of Mr. Quaintance's beliefs and that those beliefs constitute a religion. The first challenge, to Mr. Quaintance's sincerity, is nothing more than an uninformed opinion held by the prosecutor.

. . . At the evidentiary hearing on Mr. Quaintance's motion, Mr. Quaintance will describe the arc of the development of his religious beliefs. . . . The briefing so far has discussed the sincerity of Mr. Quaintance's religious practice, a threshold consideration for the Court."). In addition, at the hearing on the motion to dismiss, Defendant presented the Court with evidence relating to the sincerity of his beliefs. Furthermore, after the hearing Defendant briefed the issue and urged the Court to find that his beliefs are not only religious, but also sincere. *See* Defendant's Closing Argument [Doc. No. 160] at pp. 5, 7, and 11 ("Listening to the descriptions of their separate quests for higher spiritual knowledge and understanding, one is hard pressed to question the sincerity of Danuel Quaintance . . . . Again, it is difficult to question Mr. Quaintance's sincerity after listening to him describe the basis and path of his journey of discovery and belief. But is it religious? . . . . The Court should find that Mr. Quaintance acted out of sincere religious belief, and this matter should be set for the next phase of the hearing on his motion to dismiss, dealing with compelling government interest and least intrusive means of satisfying any such interest."). Having placed the issue of his sincerity before the Court, having presented evidence on the issue, and having asked the Court to find in his favor on that same issue, Defendants may not now be heard to argue that the Court should have left the question of his sincerity to the jury.

**IV.    NEW MATERIALS PRESENTED IN REPLY BRIEF**

Finally, in his reply brief in support of the motion to reconsider [Doc. No. 230], Defendant argues that the Court misapprehended his description of his religious beliefs and practices during the evidentiary hearing. Consequently, he attached to his reply an eight-page "statement" containing an explanation of his beliefs, presumably in an effort to persuade the Court that it erred in finding that those beliefs are neither religious nor sincerely held. However, the Court will not consider the statement for two reasons. First, it is unsigned and unsworn, and therefore inadmissible into

evidence.  Second, it contains facts and allegations that could have been raised before the Court decided Defendant's motion to dismiss.  On a motion to reconsider, the Court will not consider evidence that was available to the Defendant, but which he failed to present, at the evidentiary hearing.

**IT IS THEREFORE ORDERED** that Danuel Quaintance's *Motion to Reconsider Denial of Motion to Dismiss Indictment* [Doc. No. 219] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**